Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
Tel: 415-217-2000/Fax: 415-217-2040
pcort@earthjustice.org

Kathleen Riley, *Pro Hac Vice* Pending
Neil Gormley, *Pro Hac Vice* Pending
Earthjustice
1001 G St NW, Suite 1000
Washington, DC 20001
Tel: 202-667-4500/Fax: 202-667-2356
kriley@earthjustice.org
ngormley@earthjustice.org

*Counsel for Downwinders at Risk, Sierra Club, Center for Biological Diversity, Air Alliance Houston, Texas Environmental Justice Advocacy Services, Appalachian Mountain Club, Earthworks, Natural Resources Defense Council, and Environmental Defense Fund*

Zachary Fabish, State Bar No. 247535
Sierra Club
50 F Street, NW, 8th Floor
Washington, DC 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

Hayden Hashimoto, State Bar No. 325150
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(808) 342-8837
hhashimoto@catf.us

*Counsel for Clean Wisconsin*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOWNWINDERS AT RISK; SIERRA CLUB; CENTER FOR BIOLOGICAL DIVERSITY; AIR ALLIANCE HOUSTON; TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES; CLEAN WISCONSIN; APPALACHIAN MOUNTAIN CLUB; EARTHWORKS; NATURAL RESOURCES DEFENSE COUNCIL; and ENVIRONMENTAL DEFENSE FUND, <br><br> *Plaintiffs,* <br><br> v. <br><br> MICHAEL S. REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, <br><br> *Defendant.* | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

**INTRODUCTION**

1.      Ground-level ozone, or smog, seriously harms human health and the environment. Ozone is formed when sunlight triggers a reaction between volatile organic compounds and nitrogen oxides emitted by, for example, power plants, oil and gas production, and motor vehicles. Ozone and its precursor pollution travels across state lines; indeed, in many areas with elevated ozone levels, most of the ozone pollution comes from across state lines.

2.      To protect public health and the environment, the Clean Air Act requires EPA to establish health- and welfare-protective national ambient air quality standards, including for ozone. 42 U.S.C. § 7409(a), (b). The Act is centrally concerned with ensuring that all areas of the country attain and maintain these standards "as expeditiously as practicable but not later than" specified deadlines. *See* 42 U.S.C. § 7511(a)(1).

3.      The Act includes a "Good Neighbor Provision" to address the pollution that crosses state lines. 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Good Neighbor Provision requires states to eliminate pollution that significantly contributes to nonattainment of the ozone standard, or interferes with maintenance of the standard, in downwind states. *Id.*

4.      To ensure that downwind areas can timely attain and maintain the standards, the Act imposes a series of intermediate deadlines on both states and the EPA. Within three years of adoption of a standard, states must adopt and submit plans to EPA that implement their obligations under the Act, including those of the Good Neighbor Provision. 42 U.S.C. § 7410(a). EPA must approve or disapprove[1] states' complete plans "[w]ithin 12 months," based on whether the plans satisfy the Act. 42 U.S.C. § 7410(k)(2), (3); 42 U.S.C. § 7410(a)(2)(D)(i)(I). If EPA

---

[1] EPA may also approve in part and disapprove in part. 42 U.S.C. § 7410(k)(3).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    disapproves a state's plan, EPA must promulgate a federal plan within two years—unless the

2    state corrects its plan first. 42 U.S.C. § 7410(c)(1)(B).

3    5.     EPA adopted a strengthened ozone standard in 2015, triggering the Act's requirement

4    that states adopt Good Neighbor plans and submit them to EPA. 80 Fed. Reg. 65,292 (Oct. 26,

5    2015); 42 U.S.C. § 7410(a).

6    6.     More than 32 states have submitted Good Neighbor plans to EPA, including Alabama,

7    Arizona, Arkansas, California, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa,

8    Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana,

9    Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee,

10   Texas, West Virginia, Wisconsin, and Wyoming.[2] These states' plans were "complete" by or

11   before dates between February 27, 2019, and November 21, 2019. *See* 42 U.S.C. § 7410(k)(1)(B)

12   (deeming states' plans complete "6 months after receipt of the submission" if EPA has not

13   determined the plan is incomplete); *infra* ¶ 49 (listing dates each state's plans were "complete").

14   7.     Thus, the Act required EPA to approve or disapprove these states' Good Neighbor plans

15   by or before dates between February 27, 2020, and November 21, 2020. *See* 42 U.S.C. §

16   7410(k)(2) (requiring action "[w]ithin 12 months" of states' plans being determined or deemed

17   complete). However, EPA has not finalized approval or disapproval of any of the 32 states'

18   Good Neighbor plans.

---

[2] *See* EPA, National Status of a 110(a)(2) Ozone (2015) SIP Infrastructure Requirement,
https://www3.epa.gov/airquality/urbanair/sipstatus/reports/x110_a__2__ozone__2015_section_1
10_a__2__d__i_-_i_prong_1__interstate_transport_-_significant_contribution_inbystate.html
(Prong 1), and
https://www3.epa.gov/airquality/urbanair/sipstatus/reports/x110_a__2__ozone__2015_section_1
10_a__2__d__i_-_i_prong_2__interstate_transport_-
_interfere_with_maintenance_inbystate.html (Prong 2).

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8.    EPA's failure to approve or disapprove states' complete Good Neighbor plans in compliance with the one-year deadline prescribed by Congress violates Clean Air Act section 7410(k)(2).

9.    EPA's violation of its statutory deadline prolongs the presence of harmful levels of ozone in downwind areas. Not only have upwind states failed to eliminate their significant contributions "as expeditiously as practicable," many states' significant contributions will continue even after downwind states' attainment deadlines—including the August 2021 attainment deadline for many areas. *See* 42 U.S.C. § 7511(a)(1) tbl.1; *infra* ¶ 43. Yet, without EPA's disapproval of inadequate state plans, the Act's requirement that EPA promulgate an adequate federal plan is not triggered.

10.    To remedy EPA's failure to comply with its statutory obligation, Downwinders at Risk, Sierra Club, Center for Biological Diversity, Air Alliance Houston, Texas Environmental Justice Advocacy Services, Clean Wisconsin, Appalachian Mountain Club, Earthworks, Natural Resources Defense Council, and Environmental Defense Fund (collectively, "Plaintiffs") seek both declaratory relief and an order to compel the Administrator to approve or disapprove states' Good Neighbor plans as expeditiously as possible.

**JURISDICTION, VENUE, AND NOTICE**

11.    This is an action to compel the Administrator to perform a non-discretionary act or duty under the Clean Air Act. 42 U.S.C. § 7604(a)(2); *id.* § 7410(a)(2)(D)(i)(I), (k)(2). This Court has jurisdiction over this action under section 7604(a)(2) of the Act as well as 28 U.S.C. § 1331 (federal question jurisdiction).

12.    The requested declaratory and injunctive relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and section 7604(a)(2) of the Clean Air Act.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

13.     Venue is vested in this Court under 28 U.S.C. § 1391(e) because this suit names an officer of an agency of the United States acting in their official capacity, no real property is involved in this action, and Plaintiff Sierra Club resides in this judicial district. Additionally, some of the claims in this Complaint concern EPA's failure to perform mandatory duties regarding California, Arizona, Nevada, and Hawaii. EPA Region 9 is responsible for these states and is headquartered in San Francisco. Thus, a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district. *See* 28 U.S.C. § 1391(e).

14.     This case is properly assigned to the San Francisco or Oakland Division of this Court because Plaintiff Sierra Club resides in Oakland, and Defendant EPA resides in San Francisco. Civil L.R. 3-2(c), (d).

15.     By certified mail postmarked March 12, 2021, with a courtesy copy sent by electronic mail, Plaintiffs provided the Administrator with written notice of this action as required by the Clean Air Act, 42 U.S.C. § 7604(b)(2); 40 C.F.R. §§ 54.1–54.3.

## PARTIES

16.     Plaintiff Downwinders at Risk is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters located in Dallas, Texas. Downwinders at Risk is a diverse grassroots citizens group dedicated to protecting public health and the environment from air pollution in North Texas.

17.     Plaintiff Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California. The Sierra Club is a national membership organization dedicated to the protection of public health and the environment, including clean air, with more than 800,000 members who reside in all 50 states, D.C., and U.S. territories.

18.     Plaintiff Center for Biological Diversity is a nonprofit conservation organization incorporated under the laws of the State of California and headquartered in Tucson, Arizona, with an office in Oakland, California. The Center for Biological Diversity has approximately 84,000 members throughout the United States and the world. The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

19.     Plaintiff Air Alliance Houston is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters in Houston, Texas. Air Alliance Houston works to reduce air pollution in the Houston region to protect public health and environmental integrity through research, education, and advocacy.

20.     Plaintiff Texas Environmental Justice Advocacy Services is a nonprofit organization organized and existing under the laws of the State of Texas, with its headquarters in Houston, Texas. Texas Environmental Justice Advocacy Services advances environmental justice through education, policy development, community outreach, and legal action to achieve a healthy environment for all, regardless of race or income.

21.     Plaintiff Clean Wisconsin is a nonprofit corporation organized and existing under the laws of the State of Wisconsin, with its headquarters in Madison, Wisconsin. Clean Wisconsin is a membership organization dedicated to environmental education, advocacy, and legal action to protect air quality, water quality, and natural resources in the State of Wisconsin.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

22.     Plaintiff Appalachian Mountain Club is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its headquarters in Boston, Massachusetts. The Appalachian Mountain Club is a regional nonprofit organization dedicated to promoting the protection, enjoyment, and wise use of the mountains, rivers, and trails of the northeast outdoors.

23.     Plaintiff Earthworks is a nonprofit corporation headquartered in Washington, D.C. with more than 65,000 members throughout the United States and the world. Earthworks is dedicated to protecting communities and the environment from the adverse impacts of energy development while promoting sustainable solutions.

24.     Plaintiff Natural Resources Defense Council ("NRDC") is a nonprofit environmental and public health organization, incorporated under the laws of the State of New York, headquartered in New York, New York, and with hundreds of thousands of members nationwide. NRDC's mission is to safeguard the Earth: its people, its plants and animals, and the natural systems on which all life depends.

25.     Plaintiff Environmental Defense Fund ("EDF") is a nonprofit organization incorporated under the laws of the State of New York, headquartered in New York City, and with more than two million members and supporters nationwide. Established in 1967, EDF seeks to solve some of the most critical environmental problems facing humanity, including climate change, pollution, and exposure to toxic chemicals, and to educate the public about these problems.

26.     Collectively, Plaintiffs have members living, working, and engaging in outdoor activities in all 50 states, Washington, D.C., and U.S. territories, including in the downwind areas that receive pollution from states for which EPA has failed to approve or disapprove complete Good Neighbor plans.

27.     Defendant Michael S. Regan is the Administrator of the U.S. Environmental Protection Agency. Administrator Regan is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the deadlines established by the Act.

### FACTUAL BACKGROUND: OZONE

28.     Ozone, the main component of smog, is an air pollutant that irritates and inflames the lungs and throat, constricts breathing, and likely kills people. *See Am. Trucking Ass'ns v. EPA*, 283 F.3d 355, 359 (D.C. Cir. 2002); 80 Fed. Reg. 65,292, 65,308/3–309/1 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants at 2-20 to -24 tbl.2-1, EPA-HQ-OAR-2008-0699-0405 (Feb. 2013) ("ISA"). It causes and exacerbates asthma attacks, emergency room visits, hospitalizations, and other serious health harms. *E.g.*, EPA, Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards at 3-18, 3-26 to -29, 3-32, EPA-HQ-OAR-2008-0699-0404 (Aug. 2014) ("PA"); ISA 2-16 to -18, 2-20 to -24 tbl.2-1. Ozone-induced health problems can force adults and children to stay indoors, take medication, and miss work or school. *E.g.*, PA 4-12.

29.     Ozone can harm healthy people, but children and some adults are more vulnerable. *See* 80 Fed. Reg. at 65,310. Children are especially vulnerable, particularly when they are breathing more quickly, such as when playing outdoors, because their respiratory tracts are not fully developed. *E.g.*, *id.* at 65,310/3, 65,446/1; PA 3-81 to -82. Older people and people living with lung disease also have heightened vulnerability. *See* 80 Fed. Reg. at 65,310/3. People living with asthma also suffer more severe impacts from ozone exposure and are more vulnerable at lower levels of exposure. *Id.* at 65,311/1 n.37, 65,322/3.

30.     Ozone also damages vegetation and forested ecosystems, causing or contributing to widespread stunting of plant growth, tree deaths, visible leaf injury, reduced carbon storage, and reduced crop yields. PA 5-2 to -3; ISA 9-1. By harming vegetation, ozone can also damage entire

1   ecosystems, leading to ecological and economic losses. *See* 80 Fed. Reg. at 65,370/1–2,
2   65,377/3.

3   **STATUTORY AND REGULATORY BACKGROUND**

4   31.   Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's
5   air resources so as to promote the public health and welfare and the productive capacity of its
6   population." 42 U.S.C. § 7401(b)(1). A "primary goal" of the Act is "pollution prevention." *Id.*
7   § 7401(c). Congress found the Act to be necessary in part because "the growth in the amount and
8   complexity of air pollution brought about by urbanization, industrial development, and the
9   increasing use of motor vehicles, has resulted in mounting dangers to the public health and
10  welfare." *Id.* § 7401(a)(2).

11  32.   The Act requires that EPA establish national ambient air quality standards for certain air
12  pollutants that endanger public health and welfare, referred to as "criteria pollutants." *Id.*
13  §§ 7408–7409. One criteria pollutant is ground-level ozone, or smog. *See* 40 C.F.R. §§ 50.9,
14  50.10, 50.15, 50.19.

15  33.   The national ambient air quality standards establish allowable concentrations of criteria
16  pollutants in ambient (i.e., outdoor) air. Primary standards must be set at a level that protects
17  public health—including that of sensitive populations such as asthmatics, children, and the
18  elderly—with an adequate margin of safety. 42 U.S.C. § 7409(b)(1). Secondary standards must
19  be set at a level that protects public welfare, including protection against damage to animals,
20  crops, vegetation, and waters. *Id.* §§ 7409(b)(2), 7602(h). EPA must review and, as appropriate,
21  revise these standards at least every five years. *Id.* § 7409(d)(1).

22  34.   After EPA sets or revises a standard, the Clean Air Act requires EPA to take steps to
23  implement the standard. EPA must "designate" areas as not meeting the standard, or
24  "nonattainment"; meeting the standard, or "attainment"; or, if EPA lacks information to make a

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

designation, "unclassifiable." 42 U.S.C. § 7407(d)(1)(A)–(B). Simultaneous with designations, the Act requires EPA to classify each ozone nonattainment area based on the severity of its ozone pollution. *Id.* § 7511(a)(1) tbl.1. The classifications are, in increasing order, "marginal," "moderate," "serious," "severe," and "extreme." *Id.*

35.    Areas classified as being in "marginal" nonattainment must attain the ozone standard by a deadline three years from the date they are designated nonattainment, while "moderate" nonattainment areas have six years from the date of designation, and "serious" areas have nine years. 42 U.S.C. § 7511(a)(1) tbl.1.

36.    All areas of the country must attain and maintain these standards "as expeditiously as practicable but not later than" the specified deadlines. *See id.*; *see also NRDC v. EPA*, 777 F.3d 456, 460 (D.C. Cir. 2014).

37.    Recognizing the potential for interstate ozone pollution to frustrate downwind attainment, Congress included a "Good Neighbor Provision" that requires states to "prohibit[]…any source…from emitting any air pollutant in amounts which will…contribute significantly to nonattainment in, or interfere with maintenance by, any other State." 42 U.S.C. § 7410(a)(2)(D)(i)(I).

38.    "Within three years" after EPA sets or revises a standard, states must adopt and submit to EPA a plan that satisfies the Good Neighbor Provision, among other Clean Air Act requirements. 42 U.S.C. § 7410(a)(1). State plans must "eliminate their significant contributions in accordance with the deadline by which downwind States must come into compliance with the [ozone standard]." *See Wisconsin v. EPA*, 938 F.3d 303, 313 (D.C. Cir. 2019).

39.    States' plans must meet minimum completeness criteria. 42 U.S.C. § 7410(k)(1)(A); 40 C.F.R. Part 51, Appendix V. EPA must determine whether a state's plan meets the minimum

criteria and is complete "[w]ithin 60 days" of receipt of the plan, "but no later than 6 months after" the state's deadline to submit the plan. 42 U.S.C. § 7410 (k)(1)(B). Unless EPA finds a state plan fails to meet the minimum criteria and is incomplete "by the date 6 months after receipt of the submission," the plan "shall on that date be deemed" complete "by operation of law." *Id.*

40.     Once a state plan is "complete," EPA "shall" approve, disapprove, or approve in part and disapprove in part the plan "[w]ithin 12 months," 42 U.S.C. § 7410(k)(2), (3), depending on whether it satisfies the Clean Air Act, including the Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I); *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489 (2014).

41.     If EPA disapproves a state's plan, the Act requires EPA to promulgate a federal plan that satisfies the Act, including the Good Neighbor Provision, "within 2 years"—unless the state corrects the plan and EPA approves it before EPA promulgates the federal plan. 42 U.S.C. § 7410(c)(1).

**EPA'S FAILURE TO ACT ON INTERSTATE OZONE POLLUTION UNDER THE 2015 OZONE STANDARD**

42.     On October 26, 2015, EPA strengthened the ozone standard based on an extensive scientific record demonstrating that the prior ozone standards were inadequate to protect public health and welfare. 80 Fed. Reg. 65,292. EPA strengthened the standard to 70 parts per billion from 75 parts per billion under the 2008 ozone standard. *Id.*

43.     An area violates the 2015 standard if air monitoring data shows that the three-year average of the annual fourth highest eight-hour daily maximum ozone concentration exceeds 70 parts per billion. 40 C.F.R. § 50.15(b).

44.     The 2015 revision to the ozone standard triggered EPA's obligation to "promulgate the designations of all areas" of the country as meeting ("in attainment of") or not meeting ("in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

10

nonattainment of") the standard within two years—i.e., by October 26, 2017. 42 U.S.C. § 7407(d)(1)(B)(i) (designations due two years from the date of promulgation of the new or revised standard). EPA made its first designations under the 2015 ozone standard in November 2017 and finished designating areas in July 2018. 82 Fed. Reg. 54,232 (Nov. 16, 2017); 83 Fed. Reg. 35,136 (July 25, 2018); 83 Fed. Reg. 25,776 (June 4, 2018).[3]

45. Many areas of the United States are in nonattainment of the 2015 ozone standard; most of these areas are in marginal or moderate nonattainment. 82 Fed. Reg. 54,232 (Nov. 16, 2017); 83 Fed. Reg. 35,136 (July 25, 2018); 83 Fed. Reg. 25,776 (June 4, 2018).

46. All areas of the country must attain and maintain the standard as expeditiously as practicable. 42 U.S.C. § 7511(a)(1). In addition, areas in marginal nonattainment must attain and maintain the standard "not later than" August and September 2021, and areas in moderate nonattainment must attain and maintain the standard "not later than" August 2024. *See* 42 U.S.C. § 7511(a)(1) tbl.1; EPA, Ozone NAAQS Timelines, https://www.epa.gov/ground-level-ozone-pollution/ozone-naaqs-timelines (last visited May 11, 2021).

47. The 2015 revision to the ozone standard also triggered the requirement for states to submit to EPA plans that implement the Good Neighbor Provision, as well as other requirements of the Act. 42 U.S.C. § 7410(a) (requiring states to submit implementation plans within three years of the promulgation of a new national ambient air quality standard and setting forth requirements for plans). The deadline for states to adopt and submit plans implementing their Good Neighbor obligations under the 2015 ozone standard was October 26, 2018. *Id.*

[3] A number of areas' designations were remanded to EPA in *Clean Wisconsin, et al. v. EPA*, 964 F.3d 1145 (D.C. Cir. 2020) (McHenry County, IL; Porter County, IN; El Paso County, TX; Manitowoc County, WI; the Milwaukee, WI counties; Jefferson County, MO; Monroe County, IL; Ottawa County, MI; Weld County, CO; Door County, WI; and Sheboygan County, WI).

48.     Between August 27, 2018 and November 13, 2019, at least 32 states submitted Good

Neighbor plans to EPA under the 2015 ozone standard, including Alabama, Arizona, Arkansas,

California, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky,

Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New

Jersey, New York, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, West

Virginia, Wisconsin, and Wyoming.[4]

49.     These states' plans were deemed "complete" by or before dates between February 27,

2019 and November 21, 2019. *See* 42 U.S.C. § 7410(k)(1)(B) (deeming states' plans complete

"by the date 6 months after receipt of the submission" unless EPA finds the plan incomplete).

The following 25 states' plans were deemed complete either by EPA or by operation of law on or

before the following dates:[5]

| State | Date | State | Date |
|---|---|---|---|
| Alabama | Feb. 27, 2019 | Minnesota | April 1, 2019 |
| Arizona | Mar. 24, 2019 | Mississippi | Nov. 12, 2019 |
| Arkansas | Nov. 7, 2019 | Missouri | Nov. 15, 2019 |
| California | Apr. 1, 2019 | Montana | Apr. 1, 2019 |
| Connecticut | June 6, 2019 | Nevada | Mar. 28, 2019 |
| Florida | Mar. 26, 2019 | New Jersey | Nov. 13, 2019 |
| Georgia | Mar. 24, 2019 | New York | Mar. 25, 2019 |
| Hawaii | Nov. 13, 2019 | North Carolina | Apr. 10, 2019 |
| Illinois | Nov. 21, 2019 | Ohio | Mar. 28, 2019 |
| Indiana | May 2, 2019 | Oklahoma | Apr. 25, 2019 |
| Iowa | May 30, 2019 | South Carolina | Mar. 7, 2019 |
| Kansas | Mar. 27, 2019 | Tennessee | Mar. 17, 2019 |
| Kentucky | July 9, 2019 | Texas | Mar. 12, 2019 |
| Louisiana | Nov. 14, 2019 | West Virginia | Mar. 14, 2019 |
| Maryland | Oct. 24, 2019 | Wisconsin | Mar. 14, 2019 |
| Michigan | Sept. 8, 2019 | Wyoming | July 3, 2019 |

---

[4] *See* EPA, National Status of a 110(a)(2) Ozone (2015) SIP Infrastructure Requirement, https://www3.epa.gov/airquality/urbanair/sipstatus/reports/x110_a__2__ozone__2015_section_1 10_a__2__d__i_-_i_prong_1__interstate_transport_-_significant_contribution_inbystate.html (Prong 1), and https://www3.epa.gov/airquality/urbanair/sipstatus/reports/x110_a__2__ozone__2015_section_1 10_a__2__d__i_-_i_prong_2__interstate_transport_-_interfere_with_maintenance_inbystate.html (Prong 2).

[5] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

50.    The one-year deadlines for EPA to approve or disapprove these 32 states' Good Neighbor plans expired by or before dates between February 27, 2020, and November 21, 2020.[6] *See* 42 U.S.C. § 7410(k)(2), (3) (requiring approval or disapproval "[w]ithin 12 months" of states' plans being determined or deemed complete); *supra* ¶ 49 (listing dates each state's plans were "complete").

51.    As of the date of this filing, EPA has not approved or disapproved these 32 states' complete Good Neighbor plans.[7] Thus, EPA has failed to discharge its nondiscretionary duty under 42 U.S.C. § 7410(k)(2), (3).

52.    EPA's failure to discharge its nondiscretionary duty under 42 U.S.C. § 7410(k)(2), (3), prolongs the presence of harmful levels of ozone in downwind areas. Many areas of the country are failing to attain the strengthened 2015 ozone standard due in large part to interstate ozone pollution. *See* EPA, Data File with Ozone Design Values and Ozone Contributions, *available at* https://www.epa.gov/csapr/revised-cross-state-air-pollution-rule-update. For example, EPA projects that this year, Richmond, New York is failing to attain the standard of 70 parts per billion and receives 12 parts per billion of ozone pollution from New Jersey alone. EPA projects several counties in Wisconsin are failing to attain the standard and receive up to 20 parts per billion from Illinois alone, while only 3 to 9 parts per billion originate in Wisconsin. *Id.* In fact,

---

[6] *Id.* Additionally, the deadline for EPA to approve or disapprove of Maine's plan, which was "complete" as of August 12, 2020, *id.,* will expire on August 12, 2021. 42 U.S.C. § 7410(k)(2) & (3). EPA should not delay in approving or disapproving Maine's plan.

[7] EPA has proposed but not finalized approval for Alabama, Florida, Georgia, Iowa, North Carolina, South Carolina, and Tennessee. Comments were due on EPA's proposed approval of the plans from Alabama, Florida, Georgia, North Carolina, South Carolina, and Tennessee on January 29, 2020—more than a year ago—yet EPA has not taken final action. *See* EPA-R04-OAR-2019-0156, https://www.regulations.gov/docket/EPA-R04-OAR-2019-0156 (last visited May 11, 2021). EPA also has not taken final action on its proposed approval of Iowa's plan, *see* EPA-R07-OAR-2020-0093, https://www.regulations.gov/docket/EPA-R07-OAR-2020-0093 (last visited May 11, 2021).

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

EPA projects that up to 86% of contributions to the counties in Wisconsin that fail to attain the standard come from states other than Wisconsin. *Id.* (considering contributions from states and excluding initial & boundary concentrations, international and offshore sources, fires, etc.). The pattern repeats for other states, including Connecticut (85.4–93.4% from states other than Connecticut); New York (76.0%); New Mexico (59.0–66.5%); Pennsylvania (52.3–55.8%); Illinois (42.8–50.8%); Arizona (50.5%); Texas (up to 47.7%); and Nevada (40.1%)). *Id.*

53.     Even in areas that may currently attain the standard, interstate ozone contributions interfere with maintenance of the standard. *Id.* (listing areas with average design values of 69 parts per billion or maximum design values over 70 parts per billion that receive significant contributions of ozone pollution from other states).

**PLAINTIFFS' INJURIES**

54.     EPA's unlawful delay harms millions of people, including Plaintiffs' members, who live, work, travel, and engage in recreational activities in areas that fail to attain, or struggle to maintain, the 2015 ozone standard. These include areas that are failing to attain the standard due to continuing significant contributions of ozone pollution from upwind states with Good Neighbor plans that EPA has failed to approve or disapprove. Without EPA's disapproval of inadequate state plans, the Act's requirement that EPA prepare a federal Good Neighbor plan—unless the state corrects its plan—is not triggered. Thus, EPA's failure to take timely action on these Good Neighbor plans delays the replacement of inadequate plans with lawful state or federal Good Neighbor plans, 42 U.S.C. § 7410(c)(1), prolonging and exacerbating downwind ozone pollution that harms Plaintiffs' members' health and welfare interests.

55.     Elevated ozone levels, including levels that exceed the 2015 standard of 70 parts per billion, exacerbate Plaintiffs' members' health problems such as asthma and chronic obstructive pulmonary disease and force them to limit outdoor activities that they would otherwise be able to

1    engage in. And Plaintiffs' members' reasonable concerns about the health harms of their ozone

2    exposure diminish their enjoyment of places and activities they previously enjoyed.

3    56.    Plaintiffs' members' interests in using and enjoying the natural environment in areas that

4    do not meet or struggle to maintain the 2015 standard are further harmed because elevated levels

5    of ozone damage plant life, aquatic life, and natural ecosystems. Ozone damage to vegetation can

6    lead to wildlife avoidance of certain areas, as well as a reduction in biodiversity or other changes

7    to a local community's ecosystem, making it more difficult for Plaintiffs' members to observe,

8    cultivate or harvest, study, research, photograph, or write about wildlife, plants, or ecosystems.

9    57.    EPA's failures here also harm Plaintiffs' members by nullifying or delaying measures

10   and procedures mandated by the Act to protect their health from ozone pollution. EPA's failure

11   to approve or disapprove states' plans deprives Plaintiffs and their members of procedural rights

12   and protections to which they would otherwise be entitled, including, but not limited to, the right

13   to EPA review of state Good Neighbor plans, the right to comment on and participate in

14   proceedings to review state plans, and the right to judicially challenge any EPA approval of state

15   Good Neighbor plans that fail to protect Plaintiffs' members.

16   58.    EPA's failures here also harm Plaintiffs and their members by depriving them of relevant

17   information, including, but not limited to, EPA's findings and analysis on the contents of states'

18   Good Neighbor plans and in support of an approval or disapproval of states' plans. This absence

19   of information impairs Plaintiffs' ability to perform certain programmatic functions essential to

20   their missions, such as advocating for state or federal adoption of measures adequate to bring

21   areas that continue to violate the standard into compliance and educating members and the public

22   about cross-state ozone pollution and these protective measures. Accordingly, the health,

23   recreational, aesthetic, procedural, informational, and organizational interests of Plaintiffs and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

their members have been and continue to be harmed by the acts and omissions of EPA alleged here.

59.     A court order requiring EPA to promptly approve or disapprove these 32 states' Good Neighbor plans, as the law requires, would redress Plaintiffs' and their members' injuries. *See* 42 U.S.C. § 7410(k)(2).

**CLAIM FOR RELIEF**

60.     The allegations of all foregoing paragraphs are incorporated as if set forth fully below.

<u>Violation of the Clean Air Act</u>

61.     The deadlines for EPA to approve or disapprove 32 states' complete Good Neighbor plans, including Alabama, Arizona, Arkansas, California, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, West Virginia, Wisconsin, and Wyoming, expired by or before dates between February 27, 2020 and November 21, 2020.

62.     As of the filing of this Complaint, the Administrator has failed to approve or disapprove these states' Good Neighbor plans for the 2015 ozone standard.

63.     This constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of the Clean Air Act, 42 U.S.C. § 7604(a)(2), and thus is a violation of the Act. EPA's violations are ongoing, and will continue unless remedied by this Court.

**RELIEF REQUESTED**

Plaintiffs respectfully request that the Court:

(1)  Declare that EPA's failure to timely approve or disapprove states' Good Neighbor plans for the 2015 ozone standard for the states listed in ¶ 61 by the deadline required

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

by 42 U.S.C. § 7410(k)(2) constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of 42 U.S.C. § 7604(a)(2);

(2)   Enjoin the Administrator from continuing to violate the above-described nondiscretionary duty for each state;

(3)   Order the Administrator to approve or disapprove the Good Neighbor plans for the 2015 ozone standard for each of the 32 states identified in ¶ 61 by a date certain;

(4)   Retain jurisdiction to ensure compliance with the Court's decree;

(5)   Award Plaintiffs the costs of this action, including attorney's fees; and,

(6)   Grant such other relief as the Court deems just and proper.


DATED: May 12, 2021

Respectfully Submitted,

/s/ Hayden Hashimoto
Hayden Hashimoto, State Bar No. 325150
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(808) 342-8837
hhashimoto@catf.us

*Counsel for Clean Wisconsin*

/s/ Paul R. Cort
Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
pcort@earthjustice.org
Tel: 415-217-2000/Fax: 415-217-2040

Kathleen Riley, *Pro Hac Vice* Pending
Neil Gormley, *Pro Hac Vice* Pending
Earthjustice
1001 G St NW, Suite 1000
Washington D.C 20001
(202) 667-4500
kriley@earthjustice.org
ngormley@earthjustice.org

*Counsel for Downwinders at Risk, Sierra
Club, Center for Biological Diversity, Air
Alliance Houston, Texas Environmental
Justice Advocacy Services, Appalachian*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Mountain Club, Earthworks, Natural Resources Defense Council, and Environmental Defense Fund*

Zachary M. Fabish, State Bar No. 247535
Sierra Club
50 F Street, NW, 8th Floor
Washington, DC 20001
(202) 675-7917
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*